IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| MICHAEL COBOS AND LINDA COBOS, husband and wife | ) ) ) | CV 11-18-BLG-RFC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| STILLWATER MINING COMPANY, a Delaware Corp. | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Presently before the Court are (1) Defendant Stillwater Mining Company's

Motion for Summary Judgment and (2) Plaintiffs' cross-motion for Summary

Judgment.  The crux of the issue for both parties is whether Defendant owed

Plaintiff a duty, as a matter of law, to provide a safe workplace environment.


**FACTUAL BACKGROUND**

Defendant Stillwater Mine is a palladium and platinum mining company

located near Nye, Montana.  Thyssen Mining company is an independent

contractor that was providing contract mining services to Defendant at the Nye facility.  Plaintiff Michael Cobos was directly employed by Thyssen Mining to work as an underground miner at Defendant's Nye facility.  Plaintiff Cobos worked at Defendant's mine for seven (7) months, from September 2000 through April 2001.  Prior to being employed at the Stillwater mine, Plaintiff worked for 25 years as an underground miner at the Magma Copper Mining company in San Manuel, Arizona.

As part of his duties at the Stillwater mine, Plaintiff and an assistant would drill holes into the cave face, load them with explosives and detonated the explosives.  After waiting for the blast smoke to clear, Plaintiff would "muck" the broken rock out.  Plaintiff alleges that the underground atmosphere was filled with airborne dust and particles that were generated from the mine blasting operations.

Thyssen Mining had its own project superintendents, managers and safety managers onsite at Stillwater mine.  Thyssen Mining received bonus payments based on the amount of palladium or platinum ore that was mined.  Due to this bonus structure, Plaintiff alleges instances where his supervisors directed him to engage in mucking before the newly blasted area had been properly ventilated.[1]

---

[1]*DEFENDANT'S STATEMENT OF UNDISPUTED FACTS* (*Doc. # 24*), ¶¶ *13,15.*

Beginning in late 2008, Plaintiff began experiencing frequent nosebleeds and difficulty breathing through his nose.  In March, 2009, he  was diagnosed with squamos cell carcinoma of the nasal septum, pharynx, sinuses, with metastasis of the skull base and frontal lobe of the brain.[2]  Plaintiff alleges that his medical providers have linked his squamous cell carcinoma with his alleged exposure to platinum and palladium of the type encountered in Defendant's mine.[3]

In September 2000, Defendant contracted with Thyssen Mining to perform stope preparation, mining and backfilling at the mine ("Production Contract").[4] Through various change orders, the Production Contract was extended through early 2002.  As part of the contracting agreement between Defendant and Thyssen, the two parties agreed that Thyssen was to act as an independent contractor and not as an agent of Defendant.[5]  In addition, the Production Contract stated that Thyssen would be solely responsible for avoiding the risk of harm to the health and safety of persons and property and that Thyssen would assume all responsibility and liability with respect to all matters regarding the safety and

---

[2]*PLAINTIFFS' COMBINED STATEMENT OF GENUINE ISSUES/STATEMENT OF UNDISPUTED FACTS (Doc. # 27), ¶ 3.*

[3]*Id.*

[4]*DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (Doc. # 24), Exhibit A.*

[5]*Id., ¶ 2.*

health of its employees, suppliers and subcontractors.[6]  The Production Contract

stated that Thyssen is solely responsible for complying with all applicable laws

and regulations including the Mine Safety and Health Act and the Occupational

Safety and Health Act.[7]   The Production Contract also stated that Thyssen was

responsible for providing, requiring and training its employees on the use of

appropriate respiratory protective equipment that met international safety

standards.[8]

Regarding day-to-day activities, Thyssen Mining would have pre-shift

safety meetings for its employees and would supply its employees with safety

equipment.[9]  At times when Thyssen Mining ran out of safety equipment, Plaintiff

would request and was given safety equipment from Defendant Stillwater.[10]

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

---

[6]*Id. at ¶¶  3-4.*

[7]*Id. at ¶ 5.*

[8]*Id. at ¶ 6.*

[9]*Id. at ¶ 10.*

[10]*Id. at ¶ 11.*

as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*.  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson, v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact.  *Anderson*, 477 U.S. at 256-57.  Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial.  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Id.*  The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249.

The standard of review is the same for cross-motions as individual motions for summary judgment in that "the court must rule on each party's motion on an

individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Fair Housing Council of Riverside County v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001).  In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion.  *Id.*

## DISCUSSION

Plaintiff claims that Defendant Stillwater Mining Company failed to provide a safe work environment that resulted in his work-related injury and asserts the following claims:

> Count I - Negligence in maintaining a premises in a reasonably safe condition
>
> Count II - Violation of the Montana Safety Act
>
> Count III - Strict liability for abnormally dangerous activity
>
> Count IV - Loss of Consortium - Plaintiff Linda Cobos.

*Amended Complaint.*

The parties' summary judgment motions on Counts I, II and IV turn on whether there exists a non-delegable duty on Defendant Stillwater's part to maintain a reasonably safe workplace.  As well established, in order to prevail on a

negligence action, a plaintiff must establish a legal duty on the part of the
defendant, a breach of that duty, causation and damages. *Poole ex rel. Meyer v.
Poole*, 1 P.3d 936, 939 (Mont. 2000). The existence of a legal duty and the scope
of any duty are questions of law. *Dukes v. City of Missoula*, 119 P.3d 61, 63
(Mont. 2005).

As a general rule, a general contractor owes no duty to independent
contractors and therefore cannot be held liable for injuries incurred by their
employees. *Fabich v. PPL Montana, LLC,* 170 P.3d 943, 947 (Mont. 2007); see
also *Beckman v. Butte-Silver Bow County*, 1 P.3d 348, 350 (Mont. 2000). Relying
on this, Defendant Stillwater contends that it owed no duty to Plaintiff who was, at
the time of the alleged injury, employed by subcontractor Thyssen mining.
Montana recognizes three exceptions to this general rule: (1) where there is a non-
delegable duty based on contract; (2) where the subcontractor is engaged in an
inherently or intrinsically dangerous activity; or (3) where the general contractor
has negligently exercised control over the subcontractor's work. *Id.*

### Non-delegable duty based on contract

Plaintiff contends that Defendant was contractually responsible for the
ventilation system that was in place at the mine. Plaintiff contends that because
the case "solely concerns Mr. Cobos' exposure to airborne contaminants" and

because Defendant was "<u>exclusively</u> responsible under the contract for providing adequate ventilation, it owed Mr. Cobos a non-delegable duty to provide breathable air free of cancer-causing contaminants."[11]

In support, Plaintiffs refer the Court to the "Utilities" provision of the Production Contract wherein it states that the owner shall provide "[a]dequate ventilation through ducting to the work place."[12]  Also, Plaintiffs cite to the Deposition of Stillwater Mine's ventilation engineer Mike Brottem and his statements that Stillwater mine provided fresh air ventilation in the mine by means of fresh air intakes and exhausts, ventilation shafts and tubing, and ventilation measurement equipment and software.[13]  To bolster their argument, Plaintiffs note that in the time since Plaintiff Cobos was employed at the mine, Defendant has extensively upgraded its mine ventilation systems such that the carbon presence in the air is 1/8th the level it was at when Plaintiff was employed.[14]

The Production Contract contains language prior to the "adequate ventilation provision," and states that Defendant would furnish utilities (like

---

[11]*PLAINTIFFS' COMBINED BRIEF (*Doc. # 26) *at 6.*

[12]*DEFENDANT'S STATEMENT OF UNCONTROVERTED FACT (*Doc. # 24), *Exhibit A - Production Contract at 34.*

[13]*PLAINTIFFS' STATEMENTS OF GENUINE ISSUES (*Doc. # 27), *Exhibit A - Deposition of Mike Brottem.*

[14]*Id. at ¶ 4.*

adequate ventilation) at "outlets existing on the Jobsite and CONTRACTOR shall, at its expense, extend such utilities from said outlets to the points of use."[15] Plaintiff Cobos' claims his injury arose from the smoke/air coming from the blast sites after a blast.  Since it is reasonable to conclude that blast sites constitute the "point of use," under the Production Contract, the contractual responsibility lies with Thyssen and not Defendant.   This provision negates any contractual responsibility that Defendant provide direct adequate ventilation to the point of use.  Because there was no contractual assumption of workplace safety obligations by Defendant Stillwater Mine as the contracting owner, they cannot be held liable. *Crane v. Conoco, Inc.*, 41 F.3d 547, 551 (9th Cir. 1994) (applying Montana law).

Next, Plaintiff contends that Defendant contractually retained supervisory control over Thyssen and was responsible for mine safety.  In support, Plaintiff refers to the Production Contract provision of "Conduct of the Work."  Under that heading, the cited language states that "SMC will exercise the absolute right to direct the immediate cessation or correction of any unsafe or unhealthy act of any individual on the work site."[16]

---

[15]*DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS* (Doc. # 24), *Exhibit A - Production Contract at 34.*

[16]*PLAINTIFFS' STATEMENTS OF GENUINE ISSUES (*Doc. # 27), ¶ *5.*

Relying on this language, Plaintiffs contend that Defendant had ultimate authority and control over Thyssen regarding any unsafe or unhealthy actions.  In support, Plaintiffs cite to *Fabich v. PPL Montana*, 170 P.3d 943, 949 (2007), which holds that liability "may be based on a nondelegable duty of the owner only when a contractual provision establishes that the owner has assumed responsibility for initiating, maintaining, and supervising safety precautions."  *Id*.

Plaintiffs' reliance on *Fabich* is misplaced.  Notably absent from Plaintiffs' discussion is the subsequent paragraph of the *Fabich* opinion which stated that "[a]s indicated in . . . the contract . . . PPL's responsibility for safety . . . was secondary and totally discretionary."  *Id.*  It follows that the *Fabich* Court held that plaintiff did not establish a nondelegable duty on the part of PPL.  *Id.*

The contract language in the instant case is of the same character as that in *Fabich*.  As noted above, specific contract provisions exist stating that Thyssen would be solely responsible for avoiding the risk of harm to the health and safety of persons and property and that Thyssen would assume all responsibility and liability with respect to all matters regarding the safety and health of its employees, suppliers and subcontractors.[17]  Further, the agreement stated that Thyssen is solely responsible for complying with all applicable laws and

---

[17]*DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (Doc. # 24), ¶¶ 3-4.*

regulations including the Mine Safety and Health Act and the Occupational Safety and Health Act.[18]   The agreement also stated that Thyssen was responsible for providing, requiring and training its employees on the use of appropriate respiratory protective equipment that met international safety standards.[19]

As reflected in Comment (c) of *Restatement (Second) of Torts* § 414 regarding contractor liability, "[i]t is not enough that he has merely a general right to order the work stopped or resumed . . . (s)uch a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail."[20]

Therefore, like the contract language in *Fabich*, this Court concludes that Defendant Stillwater's responsibility for safety under the "Conduct of the Work" provision was "secondary and totally discretionary" and as such, does not establish a nondelegable duty on the part of Defendant.

Finally, Plaintiffs assert that Defendant's alleged attempt to have Thyssen contractually assume liability for the safety and health of its employees is pre-empted by federal law.  Plaintiffs contend that the Federal Mine Safety and Health

---

[18]*Id. at* ¶ 5.

[19]*Id. at* ¶ 6.

[20]Comment (c) of *Restatement (Second) of Torts* § 414 has been adopted in Montana. *Beckman*, 1 P.3d at 355.

Act of 1977 places the primary responsibility of preventing the existence of unsafe

and unhealthful conditions and practices on the mine owner.  In support, Plaintiffs

direct the Court to Section 2 of the Federal Mine Safety and Health Act which

states that the "first priority and concern of all in the coal or other mining industry

must be the health and safety of its most precious resource- the miner."  Further,

regarding issues relating to concerns about unsafe and unhealthful conditions,

Section 2(e) of that same Act states that "the operators of such mines with the

assistance of the miners have the primary responsibility to prevent the existence of

such conditions and practices in such mines."  *Id.*

Plaintiffs also rely on the Mine Safety and Health Administration Program

Policy Manual, Volume III, Part 45-1, which states in pertinent part:

> MSHA's enforcement policy regarding independent contractors
> does not change production-operators' basic compliance
> responsibilities.  Production-operators are subject to all
> provisions of the Act, and to all standards and regulations
> applicable to their mining operations. This overall compliance
> responsibility includes assuring compliance by independent
> contractors with the Act and with applicable standards
> and regulations. As a result, both independent contractors and
> production-operators are responsible for compliance with all
> applicable provisions of the Act, standards and regulations.  *Id.*

Based on this statutory and policy language, Plaintiffs allege that Defendant, as the operator of the Stillwater mine, cannot delegate safety regulations to an independent contractor, such as Thyssen.

However, as noted by Defendant, other than citation to the statute and its supporting language, Plaintiffs do not direct the Court to any case law that can support this conclusion.  To the contrary, the existing body of case law recognizes that the Mine Safety and Health Act cannot be a basis to confer a private right of action, contractually or otherwise, to private individuals.  *Price v. Brody Mining, LLC*, 2010 WL 2486343 at 1 (S.D.W.Va. 2010); see also  *King v. Island Creak Coal Co.,* 399 F.Supp,2d 735 (W.D.Va. 2004);  *Parke v. Bethenergy Mines, Inc.*, 732 F.Supp. 587, 589 (W.D.Pa. 1990).

For the foregoing reasons, this Court concludes that Defendant Stillwater mine did not have a non-delegable duty based on contract to provide a safe workplace. Defendant's Motion for Summary Judgment on this ground is GRANTED.

### *Nondelegable duty based on inherently dangerous activity*

In the alternative, Plaintiffs argue that the second exception to the general rule that a general contractor owes no duty to independent contractors applies and Defendant Stillwater mine owed a duty because Plaintiff was engaged in an

inherently or intrinsically dangerous activity. *Fabich v. PPL Montana, LLC*, 170 P.3d at 947 (Mont. 2007). Plaintiffs contend that mining and its associated activities are inherently dangerous and therefore non-delegable.

Although Defendant acknowledges that there are mining activities that can pose an inherently dangerous activity, it distinguishes the present situation by arguing that "only standard safety precautions were required to avoid what the Plaintiff alleges was his inhalation of air-borne platinum 'contaminates.'"[21]

The seminal Montana case discussing whether a certain activity is inherently dangerous is *Beckman v. Butte-Silver Bow County,* 1 P.3d 348 (Mont. 2000). In *Beckman* the plaintiff was employed by a company that was excavating and constructing a water pipe line for Butte–Silver Bow County. The plaintiff was injured when the trench where he was working collapsed. Beckman sued the County, which contended that it was not liable for Beckman's injuries under the general rule that contractors are not liable for torts of their independent contractors. The *Beckman* Court ultimately concluded that because trenching/excavation operations required "special precautions" and thus was inherently dangerous as a matter of law, Butte–Silver Bow County could be liable for torts committed by its independent contractor. *Id.* at 398-399.

---

[21] *DEFENDANT'S REPLY BRIEF (*Doc. # 28) *at 10.*

In the instant case, it is undisputed that there is a  contractor-independent contractor relationship between Defendant Stillwater Mine and Thyssen. Defendant asks this Court to narrowly focus its analysis on the inhalation of airborne contaminants and conclude that such activity is not necessarily inherently dangerous and only requires standard safety precautions.  The same type of narrow view was rejected by the Montana Supreme Court in *Paull v. Park County,* 218 P.3d 1198 (Mont. 2009).  *Paull* involved Defendant Park County contracting with a private prisoner transportation service to transport a prisoner to Montana.  In rejecting Park County's argument that driving was not an inherently dangerous activity, the *Paull* Court looked at broader aspects of the inherently dangerous activity rather the specific allegation that allegedly caused the plaintiff's injury.  In so doing, the *Paull* Court concluded the transportation of prisoners, as a whole, was an inherently dangerous activity.  *Id.*, at 1204.

Like the *Paull* and *Beckman* Court, this Court holds that mining is an activity that has significant safety risks that involve more than just the inhalation of airborne contaminants.  Moreover, in interpreting *Beckman*, the Montana Supreme Court, in *Chambers v. City of Helena,* 49 P.3d 587, 591 (Mont. 2002) (*overruled on other grounds)*, held "that the determination of inherent danger

should not rest only on the difficulty of the safety measures, but also on the nature of the activity itself." *Id.*

Since mining, to a large degree, is analogous to excavation, it is reasonable to conclude that it should be recognized as an inherently dangerous activity. This conclusion is buttressed by the fact that Congress has noted that underground mining is an inherently dangerous industry. *30 U.S.C. § 801 (1983)*; see also *McColgan v. United Mine Workers of America*, 464 N.E.2d 1166, 1169 (Ill., 1984). Due to the enclosed nature of mining and its inherent dangers, special precautions regarding proper ventilation and the use of respirators to prevent inhalation of airborne contaminants would be necessary to protect miners from unreasonable risks. *Beckman*, at 23-24.

Although this Court concludes that mining is an inherently dangerous activity as a matter of law and Defendant Stillwater has a nondelegable duty to Plaintiffs, any claims raised in Plaintiffs' Amended Complaint must still be established under the ordinary rules of negligence, requiring proof of the existence of a legal duty, breach of duty, causation and damages, on the part of the contractor. *Paull,* at 1204 (citing *Cusenbary v. Mortensen*, P.2d 351 (Mont. 1999)).

For purposes of summary judgment, this Court further finds that Plaintiffs have presented sufficient facts to show that there are genuine issues of material fact on Counts I, II and IV that would preclude summary judgment in favor of Defendant.  Specifically, Plaintiff Michael Cobos has presented evidence that he worked at Defendant's mine; that he was exposed to some type of airborne contaminants; and that he suffered damages.  Ultimately, whether Defendant breached its duty to provide a safe workplace or was the cause of Plaintiff Cobos' damages is a question for the jury.  For the foregoing reasons, Defendant's Motion for Summary Judgment on this ground is DENIED.

### *Negligent Exercise of Control*

Plaintiffs allege that the last *Beckman* exception applies in that Defendant negligently exercised control over subcontractor Thyssen's work. Specifically, Plaintiffs contend that because Defendant "incentivized Thyssen under the contract to make a bonus based on how quickly its employees could blast."[22] Plaintiffs allege that Defendant knew or should have known that Thyssen was "cutting corners on worker safety" by virtue of the "bonus" contract.[23] Further, Plaintiffs rely on the "Conduct of Work" provision as referenced above.

---

[22]*PLAINTIFFS' COMBINED BRIEF* (Doc. # 26) *at 12.*

[23]*Id. at 12-13.*

Regarding the "Conduct of Work" provision, this Court's analysis and conclusion for this third *Beckman* exception is the same as that stated in its discussion in the first *Beckman* exception. Defendant Stillwater's responsibility for safety under the "Conduct of the Work" provision is "secondary and totally discretionary" and as such, does not establish a nondelegable duty on the part of Defendant.   *Fabich,*170 P.3d at 949-50.   Moreover, as reflected in Comment (c) of *Restatement (Second) of Torts* § 414 and discussed above, Defendant's general right to order the work stopped or resumed does not confer control over the manner and methods of Thyssen's operation.

To the extent Plaintiffs argue that Defendant knew or should of known of Thyssen's allegedly negligent conduct because it "incentivized" the conduct by way of the "bonus" contract, Plaintiffs' allegations are conclusory and fail to cite to any evidence that would create an issue of fact as to preclude summary judgment on this issue.  For the foregoing reasons, Defendant's Motion for Summary Judgment on this ground is GRANTED.

### Count III - strict liability

Lastly, the Parties have filed cross-motions for summary judgment on Plaintiffs' claim that Defendant is strictly liable for Plaintiff Michael Cobos'

injuries.  In support, Plaintiffs contend that his injuries were allegedly caused by

the kind of harm that Defendant Stillwater should reasonably have anticipated.

In determining whether an activity is abnormally dangerous and thus subject

to strict liability, Montana has adopted *Restatement (Second) of Torts* §§ 519 and

520.  *Matkovic v. Shell Oil Co.*, 707 P.2d 2, 3-4 (1985).[24]  Whether an activity is

an abnormally dangerous activity is a question of law.  *Chambers v. City of*

*Helena*, 49 P.3d at 590-591.

§ 519, in pertinent part, reads:

> (1) One who carries on an abnormally dangerous activity is
> subject to liability for harm to the person, land or chattels of
> another resulting from the activity, although he has exercised
> the utmost care to prevent the harm.
> (2) This strict liability is limited to the kind of harm, the
> possibility of which makes the activity abnormally dangerous.

*Restatement (Second) of Torts* § 519 (1976).

§ 520 lists the factors to be considered in determining whether an activity is

abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the
> person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;

---

[24]The Court notes the legal distinction between its earlier discussion of "inherently dangerous" in the contractor-subcontractor non-delegable duty context and its present discussion of "abnormally dangerous" in the strict liability context.  These terms are terms of art and are not intended to be used interchangeably.  See *Fabich*, 170 P.3d at 949 (Noting the legal difference in "inherently dangerous" and "abnormally dangerous" for purposes of establishing strict liability).

> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is
> carried on; and
> (f) extent to which its value to the community is outweighed by
> its dangerous attributes.

*Restatement (Second) of Torts* § 520 (1976).

While one factor "may end up weighing more heavily than the others, a trial court's consideration of whether an activity is abnormally dangerous must at least explicitly consider all the factors listed in Restatement § 520." *Chambers*, 49 P.3d at 592. In doing so,

> [t]he essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.

*Restatement (Second) of Torts* § 520, comment f.

In the instant case, Plaintiffs narrowly define the abnormally dangerous activity as the exposure that a miner allegedly suffers from the release of "colorless, invisible airborne carcinogen" into the air.[25]  When considering § 519(2), it is of note that Plaintiffs do not argue, nor does the evidence support, that

---

[25]*PLAINTIFFS' COMBINED BRIEF* (Doc. # 26) *at 13-14.*

this kind of harm is normally associated with underground mining operations and is what makes the activity abnormally dangerous. Specifically, Plaintiffs present no evidence to support cases of significant risk from mining operations of airborne carcinogens that cause nasal carcinoma.[26]

Moreover, in *Chambers*, the Montana Court directs the trial court, in considering whether an activity is abnormally dangerous, to explicitly consider all the factors listed in Restatement § 520.  In the instant case, other than citing the § 520 factors for the Court's consideration, Plaintiffs do not analyze nor provide support for how Plaintiff Cobos' present injuries fall within the purview of the § 520 factors.  More importantly, it is not for this Court to *sua sponte* determine nor analyze the application of these factors to Plaintiffs' present claim in support of strict liability.

Therefore, this Court concludes that Plaintiffs have not presented sufficient evidentiary materials to establish a genuine dispute that Defendant Stillwater's alleged activity of exposing miners to airborne contaminants was abnormally dangerous. Therefore, Plaintiffs' claim of strict liability fails, and Defendant's Motion for Summary Judgment on this ground is GRANTED.

---

[26]This is not to say that such evidence does not exist.  Only that Plaintiffs have presented no evidence to support their argument.

## CONCLUSION

For the above-stated reasons, on Counts I, II and IV, this Court concludes that Defendant Stillwater mine has a nondelegable duty, due to the inherently dangerous nature of mining, to provide a safe workplace.  This conclusion is limited to duty only and the viability of Plaintiffs' claims are still subject to the remaining elements of their negligence claims.  As to Count III - strict liability, this Court finds that Plaintiffs have failed to present sufficient evidence to establish a material issue of fact as to preclude summary judgment in favor of Defendant Stillwater mine.

For the foregoing reasons, IT IS HEREBY ORDERED:

1.     Plaintiffs' Cross-motion for Summary Judgment (*Doc. # 25*) is GRANTED IN PART and DENIED IN PART;

2.     Defendant's Motion for Summary Judgment (*Doc. # 22*) is GRANTED IN PART and DENIED IN PART.

DATED this 3rd day of December, 2012.

*/s/ Richard F. Cebull*
RICHARD F. CEBULL
U.S. DISTRICT JUDGE